ROSS v. SAUNDERS.

(Circuit Court, D. Massachusetts. June 29, 1903.)

No. 1,484.

1. EQUITABLE LIEN—MONEY LOANED FOR USE OF PARTNERSHIP—EVIDENCE CONSIDERED.

A complainant *held*, under the evidence, not entitled to an equitable lien on a liquor license owned by a bankrupt firm, as against the firm creditors for money claimed to have been loaned to one of the partners for the use of the partnership under a verbal agreement for such lien.

In Equity. Suit to enforce lien against trustee in bankruptcy.

William Henri Irish, for complainant.
Calvin P. Sampson, for defendant.

HALE, District Judge. In this suit in equity the complainant seeks to enforce a lien upon a liquor license formerly belonging to the firm consisting of George W. Ross and Patrick J. Flemming. This firm became bankrupt, and their estate is now being administered in bankruptcy, the defendant being the trustee.

The complainant claims that in December, 1895, he loaned his father, George W. Ross, $6,000, and in order to secure the payment of this sum he caused the name of his mother, Eliza A. Ross, to be placed upon a liquor license used in the business of Ross & Flemming, with the verbal understanding that the name of his mother should be placed in said license, and in all renewals of it, for his protection, until the loan of $6,000 should be paid, the complainant himself declining to have anything to do with the liquor business, or to have his name used in connection with such business. He claims that there was an oral agreement that on default of payment of $6,000 the license should become his property; that by virtue of this agreement he is entitled to the proceeds of the sale of the license; and that the same did not pass to the trustee in bankruptcy. The mortgage of $6,000 has been partially paid, leaving only $2,500 and interest now due. A bond has been given to the trustee to be held in lieu of the license until the rights of all parties have been adjudicated by the court. The question is whether the court shall decree that the $2,500 and interest be paid to the complainant out of the proceeds of the sale of the license, or whether all of said proceeds shall be administered as a part of the estate in bankruptcy.

The defendant, as trustee of the bankrupt estate, claims that he is entitled to all the proceeds of the sale of the license, that the case does not show an actual loan made by the complainant to George W. Ross, and that no indebtedness ever existed to sustain a lien upon the license or its proceeds.

The court finds the following facts: In 1882, George W. Ross bought a parcel of real estate, with buildings thereon, in West Somerville, Mass., and had the conveyance of it made to his wife, Eliza A. Ross. It appears that he was then free from debt. He was for about 18 months in the liquor business, in partnership with one Meader, but terminated this partnership January 1, 1896, when he formed a new partnership with said Flemming. The negotiations leading to the formation of this partnership began in October, 1895. Flemming agreed to contribute something to the capital of the new firm, but it became necessary to borrow additional money to pay off the debts of the old firm. Real-estate security was required in order to raise this money. During or shortly previous to the pendency of the negotiations, the evidence indicates that Eliza A. Ross conveyed to the complainant, without money consideration, the parcel of real estate in West Somerville. The complainant then executed a mortgage on this real estate for the $6,000 needed for the business. He says he did this at the request of his father and mother. The $6,000 was paid to his father, and used by him in the business. The complainant says that in giving this mortgage he did not intend to assume any personal liability upon the mortgage note, and that he received no evidence of indebtedness from his father. In receiving the real estate from his mother he paid nothing for the conveyance, but says that the property was transferred to him with the idea, among other things, of making a home for his parents. He was to pay off the existing mortgage of $3,000, and was to keep the property in repair. It does not appear, however, how the interests of the parents could be protected and their home could be saved for them by these means with more safety or in any better way than by allowing the property to remain in the hands of the complainant's mother. The evidence does not disclose that the complainant has paid the old mortgage except by substituting a new one, or has kept the property in repair, or has paid taxes. A new mortgage was afterwards substituted for the $3,000 mortgage, and, upon a part of the $6,000 being paid to the assignees of the mortgage, this mortgage of $6,000 was discharged, and a new mortgage of $4,000 was placed upon the property by the complainant at the request of his father. It appears that the $6,000 mortgage was further secured by a mortgage of personal property given by Ross & Flemming, but the complainant did not know of this mortgage of personal property, and gave no heed to it. In fact, the whole transaction seems to have been conducted by George W. Ross without much reference to the complainant or communication with him, or giving him any note or memorandum of indebtedness, and when George W. Ross later went into bankruptcy he did not name the complainant as a creditor holding security. No attempt was made to create a legal pledge by any instrument in writing. We do not find such equities arising in favor of the complainant in the case at bar as will support an equitable lien which can be enforced in the courts. The complainant appears to have acted throughout the transaction as an agent or trustee of his father, and to have treated the property as though it were really his father's property, it having been paid for

by his father, and held for years in the name of his mother. Much of his conduct is inconsistent with his claim in the case. If we regard him as acting in an independent capacity, many of his actions indicate an intention of using the property, which he had received under circumstances which we have detailed, for the benefit of his father, with a view to assist him in the conduct of his business, and that he was doing so voluntarily and without money consideration. In this proceeding the court cannot pass upon any equitable rights which the complainant's mother, Eliza A. Ross, may have in the premises, she not being a party to the proceedings.

This court has always assumed the broadest protection to all equitable rights of parties before it, where such rights can be ascertained, and where equitable remedies can be applied; but the evidence in this case does not satisfy us that the complainant has a lien which can be equitably enforced by the courts upon a liquor license disclosed in the case and upon the bond which takes its place.

The decree must be for the defendant, with costs.